**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| MARY ANGELA HANCOCK, | : | CIVIL ACTION NO. |
| GDC ID # 985326, Case # 502217, | : | 2:11-CV-0104-RWS-SSC |
|     Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| TOM CHAPMAN, Warden, | : | PRISONER HABEAS CORPUS |
|     Respondent. | : | 28 U.S.C. § 2254 |

## ORDER

In a habeas corpus petition brought under 28 U.S.C. § 2254, Petitioner Mary Angela Hancock, a Georgia prisoner, challenges the constitutionality of her July 2002 convictions in the Superior Court of Hall County. [Doc. 1]. Now before the Court are the petition [Doc. 1] and Petitioner's Memorandum of Law Supplementing Habeas Brief Supporting Habeas Claims [Doc. 19]; Petitioner's motions seeking the following: leave to proceed *in forma pauperis* and appointment of counsel [Doc. 6], bond [Doc. 7], reduction of the time for Respondent to respond to the petition [Doc. 8], appointment of counsel [Doc. 11], and summary judgment [Doc. 12]; Respondent's motion to dismiss the petition as untimely [Doc. 10], with supporting exhibits [Doc. 13]; and Petitioner's responses thereto [Docs. 15-18, 20-21]. For the reasons set forth below, it is **ORDERED** that Respondent's motion to dismiss [Doc. 10] is **GRANTED** and that the habeas corpus petition is **DISMISSED** as time-barred.

I.  **Procedural History**

On July 18, 2002, a jury in Hall County, Georgia found Petitioner guilty on two counts each of murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Petitioner received two life sentences for murder and two five-year sentences for the firearm violations. See Hancock v. State, 596 S.E.2d 127, 128 n.1 (Ga. 2004). Petitioner filed a motion for a new trial on August 13, 2002 and amended it on February 26, 2003, and the trial court denied it on September 16, 2003. Id. In its order, the trial court informed Petitioner that she could raise ineffective assistance of trial counsel claims by separate motion filed on or before November 30, 2003. (See Doc. 13-10 at 42). Instead, Petitioner's "original trial counsel filed a notice of appeal" on October 13, 2003, and the Georgia Supreme Court affirmed Petitioner's convictions on April 27, 2004 and upon reconsideration on May 20, 2004. (Id.); Hancock, 596 S.E.2d at 127-28. In its April 2004 opinion, the Georgia Supreme Court stated the following:

> 1. The jury was authorized to find that while appellant and her husband were in the process of divorcing, appellant lived in the marital residence owned by the victims [petitioner's mother- and father-in-law]. Also residing in the home were appellant's teenaged son Nelson and adult daughter Heather, along with Heather's boyfriend, David Palmer. Both Nelson and Heather testified regarding prior instances in which appellant had flown into a violent rage and assaulted them. On the morning of the crimes, appellant got into a heated argument with Heather. Nelson, after hearing appellant beg Heather to take a swing at her so appellant could shoot her, ran out of the house and caught the bus to his high school. Heather called 911 and then hung up the phone in an attempt to "fake [appellant] out" of her rage. Appellant threw the

phone at Heather, hitting her and leaving a gash in the back of the head.

After being injured, Heather ran out of the house and contacted the victims. She met with them and decided to move out of the house. Heather returned to the house with three friends and although appellant was present, the daughter retrieved her belongings without incident. Around 4:00 p.m. the victims came to the house and parked along the road in order to collect Nelson when he returned from school. David Palmer, who had left for work before the morning's argument, arrived at the house; he joined the victims in their van as they told him about the incident. He was inside the van when appellant walked up and began arguing with the victims over their plan to take Nelson. Palmer went into the house; when appellant arrived shortly thereafter, Palmer questioned her about the incident with Heather. Appellant claimed that Heather had "jumped in the way of" a plastic bottle she had thrown. When Palmer said he would talk to Heather about the incident, appellant began screaming about the victims "trying to send her to jail and take her kids." Refusing to listen to her screaming, Palmer went outside and sat down in the driveway. A few minutes later appellant started outside, doubled back to lock the door, then returned to walk past Palmer, commenting to him that he should get in the van because he was "leaving like [the victims] were." Appellant then walked to the driver's side of the van where Palmer heard appellant screaming again about the victims not taking Nelson. Witnesses passing by in vehicles on the road testified that they saw appellant arguing heatedly with the van occupants, twice "backhand" the male driver of the van, and then begin shooting into the van before leaving the scene and walking back up the driveway. Palmer, hearing the shots and seeing the glass of the van's passenger side window shatter, ran away. As he attempted to find a neighbor at home to call for help, he saw appellant driving off just as police, contacted by others, began to arrive.

Expert testimony established that the victims were killed by gunshot wounds to their heads fired by the Bryco .380-caliber pistol found in appellant's home. No weapons were found in the van. The location of the seven bullet casings recovered at the scene indicated that some of the shots were fired while the pistol was inside the van. Appellant was later apprehended at her mother's home. When police informed her of the murder charges, she first asked if the charges

3

could be reduced and then asked if there could be a change of venue.

Appellant's defense was that she was not guilty by reason of insanity. All the mental health expert witnesses concurred that appellant has a mental illness because of her fixed bizarre delusion that she has two uteri ("uterus didelphys") and had involuntarily given birth to babies who were thereafter taken by the government. However, the State's expert opined that although appellant's thinking was bizarre when it was related to the uterus didelphys delusion, "in other aspects of [appellant's] life, she can perform, she can function, she can think." The State's expert testified that appellant's attack on the victims was not consistent with her delusion but rather was consistent with appellant's antisocial personality as manifested by her history of uncontrolled episodes of violent rage against others.[2] Based upon matters detailed at trial,

---

[2] In support of this opinion the State's expert pointed out, inter alia, that although appellant openly discussed her delusion regarding the uterus didelphys with family members, she had not mentioned any delusional belief that the victims were intending to kill her nor did she mention she acted in self-defense when she went to her mother's home after the killings; that appellant's claim she believed the victims were going to kill her was inconsistent with her behavior in voluntarily approaching the van twice and "backhanding" Mr. Hancock during their argument; likewise appellant's claim that David Palmer was a hitman was inconsistent with appellant's behavior around Palmer at the time of the crimes, i.e., following him alone into the house, speaking to him and walking directly past him while he sat outside in the driveway; and that appellant's claim that she failed to call for help after shooting the victims because she believed the police were part of the conspiracy was inconsistent with appellant's socially-appropriate behavior toward the police officer who responded to Heather's 911 call earlier the day of the crimes. The State's expert also noted that appellant had never previously reported experiencing auditory and visual hallucinations until appellant, in support of her self-defense claim, alleged that she heard Mr. Hancock ask his wife to hand him a gun and saw a gun in the van; and that appellant's knowledge of the legal system, as evidenced by her inquiry to police upon her arrest about whether the charges could be reduced and venue changed, along with appellant's pro se attempt in an earlier, unrelated criminal matter to overturn a guilty plea on the basis of her "impaired judgment" and her comment to the State's expert during evaluation that she "wanted an NGRI," meaning "not guilty by reason of insanity," indicated that appellant had an incentive to malinger mental illness.

4

> the State's expert opined that appellant understood the difference between right and wrong and was not compelled to act by her delusion when she shot the victims; that although appellant has a diagnosable mental illness, other than her delusion-related behavior appellant can think clearly but that her behavior is driven by her antisocial personality traits; and that appellant was malingering mental illness for the purposes of avoiding criminal responsibility for her actions.

Id. at 128-30.

In March 2005, Petitioner filed "through new counsel" an "Amendment to Defendant's Original Motion for New Trial" ("amendment"), raising claims of ineffective assistance of trial counsel. (See Doc. 13-10 at 42). The trial court denied the motion on June 27, 2005, and the order was docketed on July 1, 2005. (Id. at 39). Petitioner "timely filed a notice of appeal seeking review of the trial court's July 1, 2005 order denying her ineffective assistance of counsel claims." (Id. at 42). On November 2, 2009, the Georgia Supreme Court dismissed the appeal because, for the purpose of seeking appellate review in state court, Petitioner's judgment of "conviction became final upon [the July 2004] entry of the order [affirming her convictions] on the remittitur," and "her subsequent direct appeal from that conviction on the untimely raised issue of ineffective assistance [of trial counsel] was improper." (Id. at 42-43 (footnote omitted)). "Accordingly," the Court concluded, "[Petitioner's] current appeal is an improper 'second' appeal, and it must be dismissed." (Id. at 43). The Georgia Supreme Court denied Petitioner's motion for reconsideration on December 15, 2009. (See Doc. 13-11 at 1).

5

On January 25, 2010, Petitioner filed a 262-page state habeas petition, purportedly raising 31,333 grounds for relief. (Docs. 13-2 *et seq.*). The state habeas court calculated that Petitioner's judgment of conviction became final on August 19, 2004, when the time expired for her to seek certiorari review in the United States Supreme Court on direct appeal, and the time for her to file a state habeas petition expired four years later, on August 19, 2008, more than sixteen months before she filed her state petition on January 25, 2010. (Doc. 13-8 at 2). Accordingly, the state habeas court dismissed the petition as untimely in an order signed on August 2 and entered on August 9, 2010. (Id. at 1-3). The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause (CPC) to appeal that dismissal on February 28, 2011 and upon reconsideration on April 12, 2011. (Doc. 13-9 at 1). On April 26, 2011, Petitioner executed and filed her 128-page federal habeas petition, with supporting brief, raising 136 grounds for relief. (Doc. 1 & Attachs.). She later filed a 53-page supplemental supporting memorandum of law. [Doc. 19].

## II.     **Respondent's Motion to Dismiss and Petitioner's Responses**

### A.     **Brief in Support of Respondent's Motion to Dismiss [Doc. 10-1]**

Respondent moves to dismiss the petition as untimely. [Doc. 10]. Respondent asserts that Petitioner's judgment of conviction became final on August 18, 2004, when the time expired for her to seek certiorari review in the United States Supreme Court, ninety days after the Georgia Supreme Court denied her motion for reconsideration on direct appeal on May 20, 2004. (Doc.

6

10-1, Resp't Br. at 5). Respondent argues that Petitioner then had until August 18, 2005, to file either a tolling application for state post-conviction review or a federal habeas petition, but did neither until January 2010, well after the one-year federal limitations period had expired. (Id. at 5-6). Respondent asserts that because the Georgia Supreme Court found Petitioner's amendment to her motion for a new trial and subsequent appeal therefrom "to be improperly filed under state law," neither had any tolling effect upon the federal limitations period. (Id. at 6 (citing Artuz v. Bennett, 531 U.S. 4, 5-8 (2000))).

### B. Petitioner's Motion for Summary Judgment [Doc. 12]

In her Motion for Summary Judgment, Petitioner invokes 28 U.S.C. § 2244(d)(1)(B) to excuse her delay in filing her federal habeas petition. (See Doc. 12, Pet'r Mot. at 1-2). Petitioner claims that the State created an impediment to her filing a timely federal habeas petition "by delaying the filing of the record on appeal for ineffective counsel claims in 2005 which were not complete until 2009." (Id. at 1). Petitioner states that once the appeal record was finalized, she continued the direct appeal process until it was completed in the Georgia Supreme Court in November 2009, and in January 2010 she filed a state habeas petition, which she claims the state habeas court "erroneously dismissed" as untimely. (See id. at 1-2). She points out that after the Georgia Supreme Court denied her CPC application, she filed a motion to reconsider and then filed her federal habeas petition within two weeks of the Georgia Supreme court's denial of her motion. (See id. at 2).

7

### C. **Petitioner's Brief Opposing Motion to Dismiss [Doc. 15] and Answer to Response/Answer [Doc. 16]**

In her Brief Opposing Motion to Dismiss Petition as Untimely [Doc. 15], Petitioner states the following: When the trial court denied her motion for a new trial in September 2003, it "bifurcated the appeal and allowed [her] conflicted trial attorney to file [an] appellate brief and failed to notif[]y the investigative attorney of [the] filing requirements with regard to the ineffective counsel claims." (Doc. 15, Pet'r Br. at 1). When in March 2005 the "investigative court appointed attorney" raised ineffective assistance of trial counsel claims in the amendment, the "[t]rial court found the motion to be timely," held a hearing and denied the amended new trial motion in July 2005. (Id. at 1-2). The investigative attorney then filed a notice of appeal in July 2005, but the trial court "delayed the transfer of the record of the hearing to the [Georgia] Supreme Court until September of 2009, at which time [the] attorney completed the appeal[,] which was dismissed [by the Georgia Supreme Court] as a second erroneous direct appeal." (Id. at 2). The Georgia Supreme Court denied the investigative attorney's motion for reconsideration on December 19, 2009. (Id.).

Petitioner once again invokes 28 U.S.C. § 2244(d)(1)(B) and claims that the four-year delay in the delivery of the motion-for-new-trial transcript to the Georgia Supreme Court constituted an impediment to her filing a federal habeas petition "created by State action in violation of the constitution or laws of the United States," so that the limitations period for her federal habeas petition did

8

not begin to run until that impediment was removed in September 2009. (Id. at 2-3). Petitioner also claims that the "state's corrective process failed" to protect her rights "as shown by Petitioner's grounds in both the Federal and state habeas [petitions and] as . . . also shown by the trial court giving [her] ineffective conflicted attorneys for both trial and appeal." (Id. at 3-4).

In her Answer to Response/Answer [Doc. 16], Petitioner asserts that the same impediment that delayed the start of the federal limitations period until September 2009 also rendered her state habeas petition timely, as she filed it " 'within four years of the date on which an impediment to filing a petition which was created by state action . . . [was] removed, if [she] was prevented from filing [by] such state action.' " (Doc. 16, Pet'r Ans. at 2 (quoting O.C.G.A. § 9-14-42(c)(2))).[1]

### D. Petitioner's Supplemental Briefs Opposing Motion to Dismiss Petition as Untimely [Docs. 17-18, 21]

Petitioner states in her Supplemental Brief Opposing Motion to Dismiss Petition as Untimely [Doc. 17][2] that the trial court expressly found that her March 2005 amendment to her motion for a new trial was timely, rendering her

---

[1] O.C.G.A. § 9-14-42(c) provides that Georgia's four-year statute of limitations for habeas corpus petitions, like the one-year federal statute of limitations, runs from the latest of four possible trigger dates, including "(2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing [by] such state action[.]"

[2] Petitioner's supplemental briefs [Docs. 18, 21] simply point the Court to additional cases to support her argument that the one-year federal limitations period of 28 U.S.C. § 2244(d)(1) was tolled.

9

amendment "properly filed within [the] meaning of 28 U.S.C.[] § 2244[(d)](2)," although the Georgia Supreme Court ignored that finding. (Doc. 17, Pet'r Supp. Br. at 2-4). Petitioner states that after the Georgia Supreme Court denied her appeal in 2009, she acted promptly to file her state habeas petition. (Id. at 4). Petitioner claims that she was advised by her court-appointed investigative attorney to wait until her appeal from the denial of her amendment was complete before filing a state habeas petition. (Id. at 4-5). Petitioner states that she also acted promptly to file her federal habeas petition two weeks after the Georgia Supreme Court denied her CPC application. (Id. at 5).

### E. Petitioner's Application for Pardon of Innocence [Doc. 20]

In her final filing, Application for Pardon of Innocence, Petitioner points to testimony presented at her trial to show that at the time of the shootings at issue, she suffered from a mental impairment and from the delusion that she was defending herself from the victims when she shot them. (Doc. 20, Pet'r Appl. at 4-7). The jury's rejection of that defense was upheld on appeal by the Georgia Supreme Court. See Hancock, 596 S.E.2d at 129-30. Petitioner also presents a narrative of events that allegedly occurred on the day of the murders, along with purported quotations from the trial testimony, apparently to support her contentions that she is "innocent of the charges [she] was convicted of" because she was in fact defending herself from the victims when she shot them and that the "[p]rosecutor, judge, and defense attorneys conspired to cover up evidence of [her] in-laws['] [the victims'] gun—271 pieces of photo evidence were not shown

10

at trial; 59 pieces of physical evidence were not shown." (Id. at 24; see id. at 7-23). Petitioner asserts, "I[,] knowing I was about to be killed by them[,] drew my gun from my pocket and opened fire" and "I was returning fire in an effort not to be killed." (Id. at 9-10). She also asserts that her father-in-law died as a result of a shot fired by her mother-in-law that pierced both of his lungs. (Id. at 9). She asserts further that there "was a cover-up of the existence of the gun of my in-laws and the fact that I was returning fire in an effort not to be killed" (id. at 10), and she speculates that her in-laws' alleged gun was improperly removed from the crime scene (see id. at 10, 18-24).

### III. The Federal Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that an application for federal habeas review of a state court judgment of conviction be filed within one year of the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

11

28 U.S.C. § 2244(d)(1). Unless the record suggests otherwise, the limitations period for a federal habeas petition is triggered by the finality of the judgment of conviction at issue, i.e., "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a federal habeas petitioner convicted in Georgia has obtained review of her judgment of conviction in the Georgia Supreme Court, but has not sought certiorari review in the United States Supreme Court within the ninety-day time limit for doing so, her judgment of conviction becomes final under § 2244(d)(1)(A) at the close of that ninety-day window. See Sup. Ct. R. 13.1 (allowing ninety days to file certiorari petition in United States Supreme Court seeking review of "a judgment . . . entered by a state court of last resort"); Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002).

Absent statutory or equitable tolling, the federal limitations period expires one year after it begins to run. 28 U.S.C. § 2244(d)(1). Statutory tolling applies when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). However, an untimely application for post-conviction relief or an untimely appeal from the denial of such an application does not toll the federal limitations period.

> A state application is "properly filed" when " 'its delivery and acceptance are in compliance with the applicable laws and rules governing filings,' " which typically include " 'the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.' " Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1315 (11th Cir. 2006) (quoting Artuz v. Bennett, 531 U.S. 4 [] (2000)). An application that is

12

> untimely under state law is not "properly filed" for purposes of tolling AEDPA's limitations period. Id. at 1316.

Gorby v. McNeil, 530 F.3d 1363, 1366 (11th Cir. 2008), cert. denied, 129 S. Ct. 1592 (2009); see also Wade v. Battle, 379 F.3d 1254, 1262-64 (11th Cir. 2004) (holding that untimely application for certificate of probable cause to appeal denial of Georgia state habeas petition does not toll federal limitations period).

Equitable tolling is an "extraordinary remedy" that "is typically applied sparingly"—when a petitioner establishes both "(1) diligence in his efforts to timely file a habeas petition and (2) extraordinary and unavoidable circumstances." Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir.), modified on other grounds, 459 F.3d 1310 (11th Cir. 2006), cert. denied, 549 U.S. 1338 (2007). Moreover, the petitioner bears "the burden of establishing that equitable tolling [is] warranted." Pugh v. Smith, 465 F.3d 1295, 1300-01 (11th Cir. 2006). Finally, even if the limitations period has expired, a petitioner's "actual innocence" may lift the time bar to consideration of her claims on the merits. See United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005) (addressing actual innocence as a means of lifting procedural bar to untimely petition under 28 U.S.C. § 2255). However, to establish "that constitutional error has caused the conviction of an innocent person," a petitioner must present "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial," Schlup

13

v. Delo, 513 U.S. 298, 324 (1995); see also Milton v. Sec'y, Dep't of Corr., 347 F. App'x 528, 531 (11th Cir. 2009) (unpublished decision) (" '[A]ctual innocence' means factual innocence, not mere legal insufficiency." (quoting Bousley v. United States, 523 U.S. 614, 623 (1998))), cert. denied, 131 S. Ct. 923 (2011).

## IV. Discussion

Petitioner's judgment of conviction became final on August 18, 2004, when the time expired for her to seek certiorari review in the United States Supreme Court, i.e., ninety days after the Georgia Supreme Court denied her motion for reconsideration on direct appeal. See Moore, 309 F.3d at 774. At least six months elapsed untolled thereafter before Petitioner filed her amendment to her original new trial motion in March 2005.[3] The trial court denied that motion on July 1, 2005, and the Georgia Supreme Court dismissed Petitioner's appeal from that denial on November 2, 2009 because her amendment was "untimely" and her appeal was "improper." (See Doc. 13-10 at 42-43). Therefore, it appears that Petitioner's amendment had no tolling effect on the federal limitations period during the four years and approximately nine months that it was pending. See Gorby, 530 F.3d at 1366.

Furthermore, even if the amendment and the subsequent appeal tolled the limitations period through December 15, 2009, when the Georgia Supreme Court

---

[3] A more precise computation is not possible here because the exact filing date of the amendment does not appear in the record.

14

denied Petitioner's motion for reconsideration, Petitioner's state habeas petition was dismissed as untimely (see Doc. 13-8 at 2) and thus did not toll the limitations period while it was pending thereafter. See Gorby, 530 F.3d at 1366. Because more than sixteen months elapsed untolled between December 15, 2009, when the dismissal of Petitioner's second direct appeal became final, and April 26, 2011, when Petitioner executed and filed her federal habeas petition, the federal limitations period expired during that time period. The Court is not aware of, and Petitioner has not provided, any case law suggesting that this Court can simply ignore the state courts' dismissal of her state habeas petition as untimely because the state courts allegedly violated Georgia's statute of limitations in doing so. See Allen v. Siebert, 552 U.S. 3, 7 (2007) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2). Because [the] petition for state postconviction relief was rejected as untimely by the [state] courts, it was not 'properly filed' under § 2244(d)(2). Accordingly, [petitioner] was not entitled to tolling of AEDPA's 1-year statute of limitations." (internal citation and quotations omitted)).

Therefore, counting the six months that elapsed untolled before Petitioner filed her amendment, at least twenty-two months elapsed untolled before Petitioner filed her federal habeas petition, ten months beyond the twelve-month limit. Moreover, although for federal statute of limitations purposes the basis for the Georgia Supreme Court's dismissal of Petitioner's amendment is not entirely

15

clear, Eleventh Circuit case law suggests that an additional fifty-seven months elapsed untolled while Petitioner's improperly filed amendment and subsequent appeal were pending. Under either scenario, her federal petition is untimely.

Furthermore, despite Petitioner's argument to the contrary, the delays that allegedly impeded her in state court have no bearing on her delay in filing a federal habeas petition. See, e.g., Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1331-32 (11th Cir.) (noting that "[t]o delay the running of the statute of limitations, § 2244(d)(1)(B) requires state action that both 'violat[ed] . . . the Constitution or laws of the United States' and 'prevented [the prisoner] from filing' his federal petition," and concluding that petitioner's claims regarding the State's delay in appointing post-conviction counsel and its later objections to counsel's discovery requests failed to "demonstrate[] how the State's action actually prevented him from timely filing his § 2254 petitions"), cert. denied, 555 U.S. 851 (2008). Petitioner has demonstrated neither that the state court delays violated the Constitution or laws of the United States nor that the State's actions actually prevented her from filing a timely federal habeas petition, which she could have done at any time while her appeal from the denial of her amendment was pending. To the extent Petitioner is arguing that the incompetence of the court-appointed attorneys who prosecuted her new trial motions and subsequent appeals constituted a state impediment under 28 U.S.C. § 2244(d)(1)(B), that argument fails. An "assertion that the State impeded [her] from timely filing by

16

providing an incompetent attorney to assist [her] . . . . is not the type of State impediment envisioned in § 2244(d)(1)(B)." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007).

Moreover, the Court finds no basis for equitably tolling the limitations period or for lifting the resulting time bar due to Petitioner's actual innocence. On direct appeal, the Georgia Supreme Court found that "[e]xpert testimony established that the victims were killed by gunshot wounds to their heads fired by the Bryco .380-caliber pistol found in [Petitioner's] home" and that "[n]o weapons were found in the [victims'] van." Hancock, 596 S.E.2d at 130. Petitioner has made no showing that calls those findings into question. As noted above, Petitioner contends that evidence of the truth of her claim that she acted in self defense was available but hidden at the time of her trial. To support her contention, however, Petitioner has offered this Court only argument and speculation, not evidence. That is insufficient to lift the time bar to her petition on the basis that she is actually innocent. See Schlup, 513 U.S. at 324. Accordingly, Petitioner's federal habeas petition is due to be dismissed as untimely.

## V. Certificate of Appealability

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). A COA may issue only when the petitioner makes a "substantial showing of the

17

AO 72A
(Rev.8/82)

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (quoting Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted).

The Court finds no basis for encouraging Petitioner to proceed further on her time-barred claims and therefore **DENIES** her a certificate of appealability.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** Respondent's Motion to Dismiss Petition as Untimely [Doc. 10]; **DISMISSES** the petition for a writ of habeas corpus [Doc. 1] as time-barred; **DENIES as moot** Petitioner's motions for

18

leave to proceed *in forma pauperis* and appointment of counsel [Doc. 6], for bond [Doc. 7], to reduce the time for Respondent to respond to the petition [Doc. 8], for appointment of counsel [Doc. 11], and for summary judgment [Doc. 12]; and **DENIES** Petitioner a certificate of appealability.

**IT IS SO ORDERED** this  9th  day of March, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)